| | | |
|---|---|---|
| NATASHA POLK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:24-cv-00967 |
| | ) | |
| METROPOLITAN GOVERNMENT OF | ) | JUDGE CAMPBELL |
| NASHVILLE AND DAVIDSON COUNTY, | ) | MAGISTRATE JUDGE HOLMES |
| TENNESSEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' motion for summary judgment (Doc. No. 71), which is fully briefed. (Doc. Nos. 78, 85). For the reasons stated herein, the motion is **DENIED**.

## I.    BACKGROUND[1]

Plaintiff Natasha Polk brings this civil rights action against the Metropolitan Nashville Police Department ("MNPD") and Zachary Aldrich ("Officer Aldrich") for subjecting her to a false arrest, in violation of her Fourth Amendment right to be free from unreasonable seizures.[2]

On August 11, 2023, Plaintiff was admitted to a local hospital following an automobile accident. Plaintiff arrived at the hospital with a handgun that she had turned over to the hospital security. (SOF ¶ 2). An officer with the MNPD, Aldrich, was called to the hospital where Plaintiff

---

[1]    At this stage, the Court construes the factual record in the light most favorable to Plaintiff, the nonmoving party. *C.S. v. McCrumb*, 135 F.4th 1056, 1060 (6th Cir. 2025). The factual background in this Memorandum is not a complete statement of the facts in this case but rather includes the facts necessary for the Court's analysis and resolution of the pending motions.

[2]    For ease of reference, Defendants' statement of undisputed material facts (Doc. No. 73) together with Plaintiff's response (Doc. No. 79) is cited as "SOF ¶ __."

was a patient. (SOF ¶ 1). Hospital security communicated to Officer Aldrich that Plaintiff owned the handgun she had turned over.

The MNPD stores the local criminal history for individuals its officers have arrested and charged in Davidson County in its records management system. (SOF ¶ 4). MNPD officers in the field can query certain criminal history information from its records management system through a separate program called ARMS, including the charge that the individual was arrested for and the ultimate disposition of the case. (SOF ¶ 4). The disposition information in MNPD's records management system and the separate ARMS program is sourced from a separate case management system that is maintained by the Davidson County Clerk's office. (SOF ¶ 5).

Officer Aldrich ran Plaintiff's information through ARMS, which revealed that she had been charged with a felony in 1999 but did not provide any information regarding the offense of conviction. (SOF ¶ 6). Officer Aldrich was aware that sometimes the ARMS system didn't "show things exactly what they should be." (SOF ¶ 7). At the time of the felony charge, Plaintiff had a different surname but Officer Aldrich knew it was the same person as Plaintiff because the social security numbers matched. (SOF ¶ 8).

When Officer Aldrich asked Plaintiff about the felony charge, she explained that it had been reduced to a misdemeanor and showed him what appeared to be a Tennessee-issued handgun permit. (SOF ¶ 9). During her interactions with Officer Aldrich, Plaintiff also explained that she would not have a permit if she had a felony conviction and that every time she got her permit renewed she had to "show proof" and go through "so much stuff." (SOF ¶ 9). Plaintiff's husband then reiterated that every time she gets a permit the Department of Safety makes her go through "extra ass shit" to prove she is not a felon. (SOF ¶ 9). He then explained that it was not Officer Aldrich's fault that the issue had come up but that there was a problem with the database. (SOF ¶

2

9). Plaintiff further explained that every time she renews her permit she has to go downtown to get the paper, meaning judgment, and that she now keeps the paper at home because she keeps having to produce it. (SOF ¶ 9). Officer Aldrich subsequently reviewed Plaintiff's NCIC, which showed she had a valid state-issued carry permit and then reported to his supervisor – Sgt. Tyler Conrads – that her permit was valid. (SOF ¶ 9). Later in this incident, after Officer Aldrich informed Plaintiff that he was arresting her, another officer on the scene – Officer Merriweather – recommended in front of Aldrich that Plaintiff and her husband find the paperwork at home showing that Plaintiff was not convicted of a felony. (SOF ¶ 9). Plaintiff then told her husband where to look for the court judgment in their home. This conversation occurred in front of Officer Aldrich. (SOF ¶ 9). Throughout the arrest, Plaintiff's husband repeatedly explained to Officer Aldrich that Plaintiff was not a felon. (SOF ¶ 9).

Officer Aldrich called his supervisor, Sgt. Conrads, and asked for his assistance. (SOF ¶ 11). Sgt. Conrads reviewed the ARMS query on Plaintiff and recognized that it showed that Plaintiff had been charged with a felony in 1999 and listed the disposition as guilty, but it did not indicate the charge she pled guilty to. (SOF ¶ 11). Sgt. Conrads texted Officer Aldrich that the Clerk's Office did a "garbage job" of "converting all these records to computers." (SOF ¶ 12). Sgt. Conrads then reviewed the public records website for the Davidson County Criminal Court and told Officer Aldrich that it indicated Plaintiff had been convicted of a felony in 1999. (SOF ¶ 12).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence

3

of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich*., 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id*. The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.    ANALYSIS

Officer Aldrich moves for summary judgment on qualified immunity grounds. "Qualified immunity shields government officials sued in their personal capacity from liability for civil damages unless: (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Novak v. Federspiel*, 140 F.4th 815, 820 (6th Cir. 2025) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)) (internal quotation marks omitted)). MNPD asserts that Plaintiff's municipal liability claim fails *if* the Court concludes that the law was not clearly established. (*See* Doc. No. 71 at 2).

For the reasons explained below, Plaintiff has shown there is evidence in the record from which a reasonable jury could conclude that Officer Aldrich violated her Fourth Amendment rights and that the unlawfulness of his conduct was clearly established at the time. Accordingly, summary judgment is inappropriate on qualified immunity and municipal liability.

Here, Officer Aldrich claims that: (1) Plaintiff cannot establish a constitutional violation because the undisputed material facts establish that there was probable cause for her arrest and (2) that *District of Columbia v. Wesby*, 583 U.S. 48, 65 (U.S. 2018) shows that Plaintiff cannot establish that the alleged unlawfulness of his conduct was clearly established at the time. As for his first argument, Officer Aldrich claims that his reliance on database information indicating Plaintiff had been previously charged with a felony was reasonable and provided him with probable cause to arrest Plaintiff. (*See e.g.*, Doc. No. 16 at 8 ("He reasonably relied on information that he personally gleaned from MNPD's arrest records database, as well as information that fellow MNPD personnel relayed to him from other arrest/conviction record databases.")). For his second argument, Officer Adrich claims the *Wesby* case shows Plaintiff lacks a factually similar case that would satisfy the clearly established prong of the qualified immunity analysis. In *Wesby*, the circumstances the officers confronted were as follows:

> The officers found a group of people in a house that the neighbors had identified as vacant, that appeared to be vacant, and that the partygoers were treating as vacant. The group scattered, and some hid, at the sight of law enforcement. Their explanations for being at the house were full of holes. The source of their claimed invitation admitted that she had no right to be in the house, and the owner confirmed that fact.

583 U.S. at 64–65 ("Even assuming the officers lacked actual probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they reasonably but mistakenly concluded that probable cause was present.").

In her response, Plaintiff argues there is a genuine dispute of material fact as to the presence of probable cause because the evidence in the record indicates that Officer Aldrich had reason to doubt the reliability of the information provided by the databases. And she argues the Sixth Circuit cases addressing database errors and unreliable informant claims have clearly established that an officer who arrests someone because of a database error that the officer has "reason to doubt" does so in violation of the arrestee's clearly established constitutional rights. (*See* Doc. No. 78 at 5-11 (citing *Hart v. Hillsdale Cnty., Michigan*, 973 F.3d 627 (6th Cir. 2020); *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 272 (6th Cir. 2020); *Harris v. City of Saginaw, Michigan*, 62 F.4th 1028, 1031 (6th Cir. 2023)). Additionally, Plaintiff distinguishes *Wesby* from the present case on the basis that, here, the only reason to disbelieve her claim that she was not a convicted felon was the database error, and the evidence shows the database was not reliable. (*See* Doc. No. 78 at 22).

Although Defendants assert in their reply that Plaintiff's response fails to overcome their arguments in favor of summary judgment, the Court is not so persuaded. Rather, Defendants' arguments are premised on a view of the facts in the light most favorable to themselves (the moving parties) which the Court is not permitted to do in resolving their motion for summary judgment.

## IV.  CONCLUSION

 For the foregoing reasons, Defendants' motion (Doc. No. 71) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

6